UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LARRY HARRIS                                            CIVIL ACTION

VERSUS                                                  NO. 10-1607

N. BURL CAIN, WARDEN                                    SECTION "B"(5)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations pursuant to 28 U.S.C. §636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the Court has determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. §2254(e)(2).[1] For the following reasons, it is recommended that the instant petition for habeas corpus relief be **DISMISSED WITH PREJUDICE** as untimely.

---

[1] Under 28 U.S.C. §2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. §2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. §2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. §2254(e)(2)(B).

I.  PROCEDURAL HISTORY

The petitioner, Larry Harris, is a state prisoner who is presently incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On April 27, 2000, a Jefferson Parish Grand Jury indicted Harris and Leon Williams, Jr., for first degree murder in violation of LSA-R.S. 14:30.  On May 1, 2000, both Harris and Williams pleaded not guilty.  On March 31, 2001, Harris and Williams proceeded to trial by jury and were found guilty as charged.  On April 27, 2001, Harris was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.  On October 29, 2002, the Louisiana Fifth Circuit Court of Appeal reversed Harris's conviction and sentence and remanded the matter for a new trial due to an error in jury selection.  Specifically, the state appellate court found that the trial court had abused its discretion by placing "a demand on the defense that an expert witness hired by the defense must testify before it would grant [a] challenge for cause."  State v. Harris, 829 So.2d 675 (Table), No. 01-KA-1299 (La. App. 5 Cir. 2002) (unpublished opinion).[2]

On April 21, 2003, the State amended the charge against Harris and Williams to second degree murder in violation of LSA-R.S. 14:30.1.  That same day, Harris and Williams proceeded to trial.

---

[2] A copy of the state appellate court's October 29, 2002 unpublished opinion is contained in the State rec., vol. 3 of 29, tab 2.

2

On April 25, 2003, the jury returned a verdict finding Harris and Williams guilty as charged. Harris was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.

On March 30, 2004, the Louisiana Fifth Circuit Court of Appeal affirmed Harris's conviction and sentence. State v. Harris, 871 So.2d 599 (La. App. 5 Cir. 2004). On October 29, 2004, the Louisiana Supreme Court denied Harris's writ application. State v. Harris, 885 So.2d 584 (La. 2004). Harris's conviction became final ninety days later, on January 27, 2005, when the ninety-day period for seeking a writ of certiorari from the U.S. Supreme Court expired and no application therefor was made. See U.S. Sup. Ct. R. 13(1); Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003), cert. denied, 529 U.S. 1099 (2000) (citing 28 U.S.C. §2244(d)(1)(A)).

On October 31, 2005, 276 days after his conviction had become final, Harris filed with the state district court an application for post-conviction relief claiming that he was denied his right to confront his accusers, he was denied effective assistance of counsel and, as a result of cumulative errors, he was denied a fair trial.[3] On November 16, 2005, the state district court denied

---

[3] A copy of Harris's post-conviction application is contained in the State rec., vol. 9 of 29, tab 11.

3

petitioner post-conviction relief.[4]  On December 19, 2005, Harris filed a writ application with the Louisiana Fifth Circuit Court of Appeal raising the same three claims he raised with the district court.[5]  On January 5, 2006, the Louisiana Fifth Circuit Court of Appeal, finding "no error in the trial court's ruling of November 16, 2005," denied Harris's writ application.  State ex rel. Harris v. Cain, No. 05-KH-1025 (La. App. 5 Cir. 2006) (unpublished opinion).[6]  Harris did not seek review from the Louisiana Supreme Court in connection with the above claims.

On July 2, 2008, Harris filed with the Louisiana Supreme Court a "Petition for Writ of Certiorari" under docket number 08-KH-1753, complaining that his original post-conviction application was not properly reviewed by a three-judge panel of the Louisiana Fifth Circuit Court of Appeal.[7]  On October 10, 2008, the Louisiana

---

[4] A copy of the state district court's November 16, 2005 Order is contained in the State rec., vol. 9 of 29, tab 12.

[5] A copy of Harris's December 19, 2005 writ application is contained in the State rec., vol. 4 of 29, tab 4.

[6] A copy of the Louisiana Fifth Circuit's January 5, 2006 unpublished opinion is contained in the State rec., vol. 1 of 29, tab 1.

[7] A copy of Harris's "Petition for Writ of Certiorari", including a copy of the envelope in which the pleading was mailed, is contained in the State rec., vol. 29 of 29, tab 16.  In Causey v. Cain, 450 F.3d 601, 604-605 (5th Cir. 2006), the United States Fifth Circuit determined that the federal "mailbox rule" should be employed when determining the filing date of state court pleadings for purposes of determining the timeliness of a federal habeas petition.  Under the "mailbox rule", the date a pro se prisoner's pleading is provided to prison officials for mailing is the date it is considered filed.  See Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  Generally, as this Court did in connection with Harris's post-conviction filings with the state district and appellate courts, a court will look to the date a prisoner signed his pleading as the earliest date the state court pleading could have been provided to prison officials for

4

Supreme Court transferred Harris's case to the Louisiana Fifth Circuit Court of Appeal under the guidelines set forth in State v. Cordero, 993 So.2d 203 (La. 2008). State ex rel. Harris v. State, 994 So.2d 11 (La. 2008).[8]

Pursuant to the Louisiana Supreme Court's transfer, a three-judge panel of the Louisiana Fifth Circuit Court of Appeal undertook a review of petitioner's earlier writ application, 05-KH-1025, wherein petitioner claimed he was denied his right to confront his accusers, he was denied effective assistance of counsel and, as a result of a cumulation of errors, was denied a fair trial. On February 18, 2009, the state appellate court issued its opinion, denying the above three claims on the merits. Harris v. Louisiana, No. 08-WR-943 (La. App. 5 Cir. 2009) (unpublished opinion).[9] On March 18, 2009, Harris timely filed a writ application with the Louisiana Supreme Court seeking relief in connection with the state appellate court's February 18, 2009

---

mailing. See Colarte v. Leblanc, 40 F.Supp.2d 816, 817 (E.D. La. 1999). However, Harris did not date the "Petition for Writ of Certiorari" which he submitted to the Louisiana Supreme Court. Accordingly, the Court will utilize the date, "Jul 02 2008", post-marked on the envelope containing the "Petition for Writ of Certiorari", as Harris's filing date.

[8]On February 20, 2009, the Louisiana Supreme Court denied Harris's application for rehearing. State ex rel. Harris v. State, 1 So.3d 470 (La. 2009).

[9]A copy of the Louisiana Fifth Circuit's February 19, 2009 unpublished opinion is contained in the State rec., vol. 29 of 29, tab 19.

adverse decision.[10]  On February 12, 2010, the Louisiana Supreme Court denied Harris's writ application.  State ex rel. Harris v. State, 27 So.3d 847 (La. 2010).

On May 25, 2010, Harris filed the instant federal habeas corpus petition.  (Rec. doc. 3).  In its response (rec. doc. 9), the State argues that the instant action is untimely and that petitioner, with respect to "several claims/subclaims", has not exhausted his state court remedies.  For the reasons set forth below, the Court finds this action is time-barred and, therefore, need not reach the exhaustion issue.

II. GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. §2254.  The AEDPA went into effect on April 24, 1996[11] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998)(citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Harris's petition.

---

[10]A copy of Harris's March 18, 2009 writ application, 09-KH-0925, is contained in the State rec., vol. 29 of 29, tab 18.

[11]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

III.  STATUTE OF LIMITATIONS

The AEDPA requires a petitioner to bring his §2254 petition within one year of the date his conviction became final.[12] Duncan v. Walker, 533 U.S. 167, 179-80 (2001). Harris's conviction became final on January 27, 2005, when the period expired for him to seek a writ of certiorari from the U.S. Supreme Court.

Therefore, under a literal application of the statute, Harris had until January 27, 2006, to file his federal habeas corpus petition, which he did not do. His petition must therefore be dismissed as untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

---

[12]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
- A. the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
- B. the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
- C. the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
- D. the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. §2244(d).

First, the United States Supreme Court has held that the one-year statute of limitations period in Section 2244(d)(1) of the AEDPA may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. Pace, 544 U.S. at 418-19; Cousin v. Lensing, 310 F.3d 843, 848 (5th Cir. 2002).

Harris has not asserted any reason, and the Court can find none, that might fit the restrictive boundaries of "exceptional circumstances" described in recent decisions to entitle him to equitable tolling. See United States v. Wynn, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated,

separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, the AEDPA itself provides for interruption of the one-year limitations period in stating that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. §2244(d)(2) (emphasis added). By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. Flanagan, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute. Duncan, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts cited herein have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

9

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period. Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F. Supp.2d 771, 771-772 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must conform with a state's applicable procedural filing requirements. Williams v. Cain, 217 F.3d 303, 306 (5th Cir. 2000). In Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005) (quoting Carey v. Saffold, 536 U.S. 214, 226 (2002), the Court provided: "When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of §2244(d)(2)."

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" Carey, 536 U.S. at 219-220; Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The one-year AEDPA limitations period began to run in Harris's case on January 28, 2005, the day after his conviction became

final. The limitations period ran uninterrupted for 276 days, until October 31, 2005, when Harris filed an application for state post-conviction relief. Tolling then continued uninterrupted for the duration of the post-conviction proceedings, so long as Harris sought supervisory review in a timely manner. Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-70. (5th Cir. 2004).

The state district court denied Harris post-conviction relief on November 16, 2005. Pursuant to Louisiana Uniform Rules of the Courts of Appeal Rule 4-3, Harris had 30 days, until December 16, 2005, to timely file a writ application with the Louisiana Fifth Circuit Court of Appeal. See Melancon v. Kaylo, 259 F.3d 401, 404-406 (5th Cir. 2001).

Harris did not file his writ application with the Louisiana Fifth Circuit until December 19, 2005, two days after it was due. As such, two more prescription days, for a total of 278 days, expired. The state appellate court denied post-conviction relief on January 5, 2006.[13]

---

[13]The Louisiana Fifth Circuit, in denying Harris's writ application on January 5, 2006, made no mention of the application's untimeliness. See State ex rel. Harris v. Cain, No. 05-KH-1025 (State rec., vol. 1 of 29, tab 1). Further, in reconsidering Harris's writ application on February 19, 2009, in accordance with Cordero, supra, a three-judge panel of the Louisiana Fifth Circuit specifically considered the merits of Harris's three post-conviction claims. See Harris v. Louisiana, No. 08-WR-943 (State rec., vol. 29 of 29, tab 19). Under these circumstances, prescription was clearly tolled during the period Harris's untimely writ application was pending before the Louisiana Fifth Circuit Court of Appeal. See Grillette, 372 F.3d at 775.

final. The limitations period ran uninterrupted for 276 days, until October 31, 2005, when Harris filed an application for state post-conviction relief. Tolling then continued uninterrupted for the duration of the post-conviction proceedings, so long as Harris sought supervisory review in a timely manner. Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-70. (5th Cir. 2004).

The state district court denied Harris post-conviction relief on November 16, 2005. Pursuant to Louisiana Uniform Rules of the Courts of Appeal Rule 4-3, Harris had 30 days, until December 16, 2005, to timely file a writ application with the Louisiana Fifth Circuit Court of Appeal. See Melancon v. Kaylo, 259 F.3d 401, 404-406 (5th Cir. 2001).

Harris did not file his writ application with the Louisiana Fifth Circuit until December 19, 2005, two days after it was due. As such, two more prescription days, for a total of 278 days, expired. The state appellate court denied post-conviction relief on January 5, 2006.[13]

---

[13] The Louisiana Fifth Circuit, in denying Harris's writ application on January 5, 2006, made no mention of the application's untimeliness. See State ex rel. Harris v. Cain, No. 05-KH-1025 (State rec., vol. 1 of 29, tab 1). Further, in reconsidering Harris's writ application on February 19, 2009, in accordance with Cordero, supra, a three-judge panel of the Louisiana Fifth Circuit specifically considered the merits of Harris's three post-conviction claims. See Harris v. Louisiana, No. 08-WR-943 (State rec., vol. 29 of 29, tab 19). Under these circumstances, prescription was clearly tolled during the period Harris's untimely writ application was pending before the Louisiana Fifth Circuit Court of Appeal. See Grillette, 372 F.3d at 775.

Under Louisiana Supreme Court Rule X, §5, Harris had 30 days, until February 6, 2006, to timely seek relief from the Louisiana Supreme Court in connection with the state appellate court's January 5, 2006 adverse decision.[14] Harris, however, did not file a writ application with the Louisiana Supreme Court until July 2, 2008. Accordingly, on February 7, 2006, prescription once again commenced to run, expiring on May 4, 2006, long before Harris, on July 2, 2008, filed his "Petition for Writ of Certiorari" with the state high court.[15]

---

[14]Harris obtained two extra prescriptive days to timely seek relief from the Louisiana Supreme Court since the actual 30-day deadline of February 4, 2006, fell on a Saturday.

[15]As noted earlier, Harris, in his July 2, 2008 writ application to the Louisiana Supreme Court, sought to have his original post-conviction application properly reviewed by a three-judge panel of the Louisiana Fifth Circuit Court of Appeal. Harris was arguably not aware of the basis of this writ application and, as such, could not have filed it earlier, thereby tolling prescription earlier, until shortly before he sought relief when the fact that pro se post-conviction applications were not being reviewed by three-judge panels came to light via the publication of a suicide note from Jerrold Peterson, the former Central Staff Director of the Louisiana Fifth Circuit Court of Appeal. Based upon this fact, the issue arises as to whether Harris, pursuant to equitable estoppel, is entitled to a tolling of prescription for the period of time between February 6, 2006, when his writ application to the Louisiana Supreme Court was due, until July 2, 2008, when he filed a writ application with the state high court. However, even if this Court were to decide that such tolling was appropriate, the instant action would nevertheless be untimely.
   276 prescription days expired before Harris filed his original post-conviction application with the state district court, thereby tolling the statute of limitations. See discussion supra at p. 3 and p. 11. Two more prescription days expired, for a total of 278, between the time Harris's original post-conviction writ application to the state appellate court was due and the time he filed his writ application. See discussion supra at p. 11. Applying equitable estoppel, prescription remained tolled until February 12, 2010, when the Louisiana Supreme Court denied Harris post-conviction relief on the merits. Harris was not entitled to any additional tolling by virtue of La.C.Cr.P. art. 922 which provides for a period of 14 days, after judgment is rendered, to apply for rehearing, as Article 922 applies to judgments on appeal and there is no corresponding rule applicable to post-conviction proceedings. Bennett v. Cain, 2010 WL 5490602, *2 n.2 (M.D. La.

Accordingly;

**RECOMMENDATION**

It is hereby **RECOMMENDED** that the application for federal habeas corpus relief filed on behalf of petitioner, Larry Harris, be **DISMISSED WITH PREJUDICE** as untimely.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. §636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996)(<u>en banc</u>).[16]

New Orleans, Louisiana, this  1st  day of    March       , 2011.

---

Nov. 29, 2010)(Dalby, MJ.)(citing <u>Melancon v. Kaylo</u>, 259 F.3d 401, 404 (5th Cir. 2001) (tolling of limitation period ended on date Louisiana Supreme Court denied post-conviction writ application); <u>Hall v. Cain</u>, 216 F.3d 518, 520 (5th Cir. 2000) (same))(additional citations omitted). Accordingly, on February 13, 2010, prescription again commenced to run, expiring 87 days later, on May 10, 2010. Harris did not file the instant action until May 25, 2010.

[16]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to fourteen days.

_____
           ALMA L. CHASEZ
     UNITED STATES MAGISTRATE JUDGE